UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MELANIE MCKEE (on behalf of decedent Jared Scott Schoeff), | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CAUSE NO. 1:10-CV-275 ) |
| WELLS COUNTY SHERIFF BOB FRANTZ, ADVANCED MEDICAL SERVICES a/k/a ADVANCE CORRECTIONAL HEALTHCARE, INC., DR. RICHARD HIRSCHLER, NURSE LORA PATTON a/k/a LORA PAFTON, TENEKA APPS, JENNIFER MILLER, and JOHN/JANE DOES, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on Plaintiff's Motion for Leave to File First Amended Complaint. (Docket # 88.) In the motion, Plaintiff seeks to name John Bowers as the new personal representative of decedent Jared Scott Schoeff's estate, to change the name of Defendant "Advanced Medical Services a/k/a Advance Correctional Healthcare, Inc." to Advanced Correctional Healthcare, Inc., and to remove Defendants "John/Jane Does" from the Complaint. For the following reasons, Plaintiff's motion will be GRANTED.

**II. FACTUAL AND PROCEDURAL BACKGROUND**

On August 12, 2010, Melanie McKee, on behalf of her son, decedent Schoeff, filed this suit against Wells County Sheriff Bob Frantz, Dr. Richard Hirschler, Nurse Lora Patton, Teneka Apps, Jennifer Miller, "Advanced Medical Services a/k/a Advance Correctional Healthcare,

1

Inc.," and John/Jane Does. (Docket # 1.) The Complaint alleges that when Schoeff was a prisoner in the Wells County Jail, the Defendants denied him adequate medical care, resulting in his death on August 12, 2008. (*See* Compl. ¶¶ 2-3, 5, 7.) The Complaint is brought under 42 U.S.C. § 1983 and the tort laws of the state of Indiana. (*See* Compl. ¶¶ 3, 5-7, 22.) As regards "Advanced Medical Services a/k/a Advance Correctional Healthcare, Inc." specifically, the Complaint alleges that this company, as the direct employer of Dr. Hirschler, Nurse Patton, and unidentified medical staff, is liable for their negligent acts or omissions under *respondeat superior*. (*See* Compl. ¶ 6.)

On January 14, 2011, this Court gave notice that the 120 days permitted by Federal Rule of Civil Procedure 4(m) to serve the Defendants had elapsed and that service of process had not been accomplished as to several Defendants, including "Advanced Medical Services a/k/a Advance Correctional Healthcare, Inc." (Docket # 19.) Upon receiving a report from the Plaintiff explaining her difficulties completing service, the Court found good cause and granted the Plaintiff up to and including March 24, 2011, to effectuate service. (Docket # 22.)

On March 18, 2011, Advanced Medical Services, Inc., of Noblesville, Indiana, gave notice to the Court that it was not the Defendant named in the Complaint and had never been known by the alias "Advance Correctional Healthcare, Inc." (Docket # 31.) At this point, Plaintiff learned that the correct entity name of Dr. Hirschler's and Nurse Patton's employer was Advanced Correctional Healthcare, Inc. ("ACH"). (Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss ¶ 4.) Also on March 18th, Plaintiff requested an enlargement of time to substitute a new personal representative in place of McKee (Docket # 27), which the Court granted (Docket # 30). A few days later, the Court also granted Plaintiff a second extension, up to and including

May 8, 2011, to effect service on "Advanced Medical Services a/k/a Advance Correctional Healthcare, Inc." (Docket # 33.)

Before this deadline, on April 21, 2011, ACH received the Summons and Complaint at its business address in Peoria, Illinois. (ACH's Br. in Supp. of Mot. to Dismiss ¶ 6.) ACH maintains that, until then, it had no notice of Plaintiff's claims. (ACH's Br. in Supp. of Mot. to Dismiss ¶¶ 7-8.)

After staying the case twice (Docket # 63, 71), the Court held a Rule 16 Preliminary Pretrial Conference on November 22, 2011, at which the Court granted Plaintiff up to and including January 4, 2012, to substitute the personal representative (Docket # 80). The Report of the Parties' Planning Meeting, which the Court approved and made an order of the Court (Docket # 80), set the Plaintiff's deadline to amend the complaint for February 27, 2012 (Docket # 79).

On December 9, 2011, the Wells Circuit Court appointed John Bowers as the successor personal representative of Schoeff's estate. (Mot. for Leave to File First Am. Compl. Ex. A.) Consequently, on January 20, 2012, Plaintiff moved for leave to file an amended complaint (Docket # 88), to which ACH objected on several grounds, including Plaintiff's failure to meet the January 4, 2012, deadline for substituting a personal representative as well as futility (Docket # 89).

### III. STANDARD ON A MOTION TO AMEND

Under Federal Rule of Civil Procedure 15, a party may amend her pleading once as a matter of course within twenty-one days after serving it, or if the pleading is one to which a responsive pleading is required, twenty-one days after service of a responsive pleading or

3

twenty-one days after service of a motion under Federal Rule of Civil Procedure 12(b), (e), or (f), whichever is earlier. FED. R. CIV. P. 15(a)(1). Otherwise, a plaintiff may amend only by leave of the court or by written consent of the adverse party. FED. R. CIV. P. 15(a)(2). Leave to amend is freely given when justice so requires. FED. R. CIV. P. 15(a)(2). However, this right is not absolute, *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002), and can be denied for undue delay, bad faith, dilatory motive, prejudice, or futility, *Ind. Funeral Dirs. Ins. Trust v. Trustmark Ins. Corp.*, 347 F.3d 652, 655 (7th Cir. 2003).

## IV. DISCUSSION

ACH advances two challenges to Plaintiff's motion to amend: (1) that Plaintiff's substitution of the personal representative should be denied as untimely (ACH's Resp. in Opp. to Pl.'s Mot. for Leave to File First Am. Compl. ("ACH's Resp.") ¶ 2); and (2) that ACH's addition as a defendant would be futile because the proposed amended complaint fails to state a legally cognizable claim against ACH, is barred by the statute of limitations, and would not relate back[1] (*see* ACH's Resp. ¶ 3; ACH's Br. in Supp. of Mot. to Dismiss 4-9).

### A. John Bowers Will Be Substituted As Personal Representative

Under Federal Rule of Civil Procedure 16(b), a "schedule may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). "[T]he good cause standard focuses on the diligence of the party seeking the amendment." *BKCAP, LLC v. Captec Franchise Trust 2000-1*, 3:07-cv-637, 2010 WL 1222187, at *2 (N.D. Ind. Mar. 23, 2010) (citing *Tschantz v. McCann*, 160 F.R.D. 568, 571 (N.D. Ind. 1995)); *see Trustmark Ins. Co. v. Gen. &*

---

[1] ACH incorporated into its response to Plaintiff's motion to amend its arguments from its Motion to Dismiss (Docket # 59), including that the original complaint should be dismissed under Rules 12(b)(4) and 12(b)(5). (ACH's Resp. ¶ 3.) The Court can ignore these arguments at this juncture.

4

*Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005). "In other words, to demonstrate good cause, a party must show that despite its diligence, the time table could not reasonably have been met." *BKCAP*, 2010 WL 1222187, at *2 (citing *Tschantz*, 160 F.R.D. at 571). Moreover, "[w]hether 'good cause' exists is a matter within the court's discretion." *Masonite Corp. v. Craftmaster Mfg., Inc.*, No. 09 CV 2131, 2011 WL 1642518, at *2 (N.D. Ill. Apr. 29, 2011) (citing *United States v. 1948 S. Martin Luther King Dr.*, 270 F.3d 1102, 1110 (7th Cir. 2001)).

Here, Plaintiff missed the January 4, 2012, deadline for substituting the personal representative by 16 days. (*See* Docket # 80.) Plaintiff's counsel explains that their staff conflated the January 4th deadline for substituting the personal representative with the February 27, 2012, deadline for amending the complaint. (Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss and Suppl. to Mot. for Leave to File First Am. Compl. ("Pl.'s Suppl.") 1-2.) Due to this confusion, counsel's staff did not separately calendar the January 4th deadline for substituting the new personal representative, causing counsel to mistakenly believe they had additional time to file an amended complaint substituting the personal representative. (Pl.'s Suppl. 2.)

Errors in calendaring deadlines have been found to constitute "good cause" in missing deadlines. *See Boctking v. United States*, No. 3:10-cv-10-RLY-WGH, 2010 WL 2265310, at *2 (S.D. Ind. June 2, 2010) (setting aside a default because good cause shown when calendaring error led defendant to believe it had one more month to file an answer); *cf. Pincay v. Andrews*, 389 F.3d 853, 855-56 (9th Cir. 2004) (upholding exercise of district court's discretion to permit the filing of a notice of appeal which was late because of a paralegal's calendaring mistake). Additionally, counsel's mistake appears to be a honest and inadvertent one rather than "a situation where Plaintiff's counsel ignored the information he received in open court . . . and

5

then ignored or overlooked a deadline that he had virtually set for himself." *Tschantz*, 160 F.R.D. at 572 (finding a lack of good cause). Counsel was not "sitting on their hands," but rather engaging in efforts to advance the case, such as inquiring about mediation and submitting initial disclosures (Pl.'s Suppl. 3), and they missed the deadline by only 16 days. *See Stevens v. Smith*, No. 04 C 985 X, 2005 WL 2365294, at *4 (W.D. Wis. Sept. 26, 2005) (finding good cause for exceeding Rule 4(m) deadline when plaintiffs were not sitting on their hands and missed the deadline by less than two weeks).

Furthermore, here, discovery is open until June 27, 2012, and no trial date is set. Most importantly, while Plaintiff missed the deadline to substitute the personal representative, the proposed amended complaint, including this substitution, was filed well before February 27, 2012, the deadline the parties agreed to for amending the complaint. Accordingly, Plaintiff will be allowed to substitute John Bowers as the new personal representative for Schoeff's estate.

### B. ACH Will Be Added As a Defendant

ACH argues that it was not a Defendant in the original complaint and that adding it now would be futile because such an amendment would be barred by the statute of limitations and could not relate back. Even assuming that ACH was not an original Defendant, under Federal Rule of Civil Procedure 15(c)(1)(C), "[a]n amendment that seeks to add a new party relates back when it asserts a claim that arises out of the same conduct, transaction, or occurrence set out in the original pleading, and when the party to be brought in received notice of the action such that it will not be prejudiced and knew or should have known that the action would have been brought against it *but for a mistake concerning the party's identity*." *Pierce v. City of Chicago*, No. 09 C 1462, 2010 WL 4636676, at *2 (N.D. Ill. Nov. 8, 2010) (citing FED. R. CIV. P.

6

15(c)(1)(C)(i)-(ii)) (emphasis added in *Pierce*); *see Krupski v. Costa Crociere S.p.A.*, 130 S. Ct. 2485, 2491-92 (2010). Rule 15(c) also requires that the party to be added had notice of the claims within the period provided by Rule 4(m). FED. R. CIV. P. 15(c)(1)(C); *Keller v. United States*, 444 F. App'x 909, 911 (7th Cir. 2011) (unpublished). Therefore, "Rule 15(c) incorporates not only Rule 4(m)'s standard allowance of 120 days for service of process, but also any extension of time for good cause." *Keller*, 444 F. App'x at 911 (citing FED. R. CIV. P. 15(c) Advisory Comm. Notes (1991 Amendment)); *accord Robinson v. Clipse*, 602 F.3d 605, 608 (4th Cir. 2010). Accordingly, a party can be added if they received notice within 120 days—plus any extensions for good cause—of the timely filed complaint. *Keller*, 444 F. App'x at 912.

Here, there is no dispute that Plaintiff's claim against ACH arises out of the same conduct set out in the Complaint. Moreover, ACH has not pointed to any prejudice it would suffer from being added as a party. ACH further admits that it received notice of the action on April 21, 2011, when the Summons and Complaint were delivered to its address. (ACH's Br. in Supp. of Mot. to Dismiss ¶¶ 6-7.) As the Complaint was filed on August 12, 2010, this is well beyond the 120 days allotted by Rule 4(m). The Court, however, had previously found good cause and granted the Plaintiff two extensions to effectuate service (Docket # 22, 33); the second extension gave Plaintiff until May 8, 2011, to effect service on "Advanced Medical Services a/k/a Advance Correctional Healthcare, Inc." (Docket # 33). Because ACH had notice on April 21, 2011, within the time period of the Court's second extension for good cause, and since Rule 15(c) incorporates any extension of time for service of process for good cause, *Keller*, 444 F. App'x at 911, ACH had notice within the time required for relation back.

As for mistake of identity, the Complaint is explicit that it intends to sue "the direct

7

employer of Dr. Richard Hirschler and one or more other medical staff at Wells County Jail," which Plaintiff mistakenly believed to be Advanced Medical Services, and that this company did business in Peoria, Illinois. (Compl. ¶ 6.) ACH admits that it provides medical services to inmates at the Wells County Jail under a contract with the Sheriff and that its business address was in Peoria, Illinois (albeit at a different address than alleged in the Complaint). (ACH's Br. in Supp. of Mot. to Dismiss ¶¶ 6, 8.) Therefore, as the company providing medical services to the inmates at Wells County Jail, once ACH received the Summons and Complaint on April 21, 2011, it "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." FED. R. CIV. P. 15(c)(1)(C)(ii). Accordingly, the amended complaint, naming ACH as a Defendant, will be permitted to relate back under Rule 15(c).

On the other hand, even if the amended complaint will relate back, the amendment need not be allowed if it would be futile. *See Johnson v. Dossey*, 515 F.3d 778, 780 (7th Cir. 2008) ("A district court need not allow the filing of an amended complaint . . . if it is clear that the proposed amended complaint is deficient and would not survive a motion to dismiss." (citations omitted)). To this end, ACH argues that Plaintiff's allegations against ACH fail to state a legally cognizable claim. Specifically, according to ACH, Plaintiff alleges that, under *respondeat superior*, ACH is liable only for the "negligent acts/and or negligent omissions" of Dr. Hirschler, Nurse Patton, and other unidentified medical staff, but that the Complaint fails to allege any specific acts of negligence by them. (ACH's Br. in Supp. of Mot. to Dismiss 7.) In response, Plaintiff argues that "[e]very act or wrongdoing and omission alleged against Dr. Hirschler and Nurse Patton in the Complaint, which constitutes deliberate indifference to a serious medical

8

need, also is alleged to qualify as constituting a negligent act or omission." (Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss 7.)

Plaintiff's argument is persuasive. The proposed amended complaint alleges that Dr. Hirschler and Nurse Patton (as employees of ACH) knew about Schoeff's serious medical condition—papollima of the throat—his need for surgery, and the risk of death without it, but that Schoeff never received the surgery. (*See* Proposed Am. Compl. ¶¶ 10-13.) These allegations could make out a claim of both deliberate indifference and negligence. Just as these facts could amount to allegations that Dr. Hirschler and Nurse Patton acted or failed to act despite their knowledge of a substantial risk of serious harm, as is required to establish deliberate indifference, *Jones v. Simek*, 193 F.3d 486, 490 (7th Cir. 1999) (citation omitted), they could also form the basis for "ordinary medical malpractice," that is, "malpractice that consists of negligent treatment," *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994). Whether these claims will actually amount to deliberate indifference or negligence is not something the Court can determine at this point, but their assertion now, along with the inferences the Court may draw, indicates they are not futile. *See Nance v. Vieregge*, 147 F.3d 589, 590-91 (7th Cir. 1998) (noting that, although the district judge found the facts in the complaint were consistent with negligence, none of the factual averments *ruled out* the possibility of deliberate indifference so the complaint could not be dismissed on this ground and stating that "[o]nly later—via summary judgment or trial—does a court sift the probable from the merely possible").

ACH nevertheless argues that because Plaintiff asserts negligence against other individual defendants, her failure to make similar specific allegations against Dr. Hirschler and Nurse Patton illustrates that Plaintiff was only initially suing them under § 1983. (ACH's Reply

in Supp. of Mot. to Dismiss ¶ 8.) Plaintiff admits, however, that she is not seeking damages against Dr. Hirschler or Nurse Patton under any state tort theories; rather, she is seeking to hold their *employer*, ACH, liable under *respondeat superior* for their negligence. (*See* Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss 7.) Considering that pleading negligence does not require much in the way of factual assertions, *see*, for example, the bare bones recitation approved by Form 11 of the Federal Rules of Civil Procedure, and considering that pleadings are to be construed in a non-technical, liberal manner, *see* FED. R. CIV. P. 8(e); *Martin v. Bartow*, 628 F.3d 871, 878 (7th Cir. 2010), and "need not set out either legal theories or comprehensive factual narratives," *Rapid Test Prod., Inc. v. Durham Sch. Servs., Inc.*, 460 F.3d 859, 860-61 (7th Cir. 2006) (citations omitted), Plaintiff has alleged enough to survive a claim of futility.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to File First Amended Complaint (Docket # 88) is GRANTED. Plaintiff is instructed to serve the Amended Complaint and Summons upon ACH.[2]

SO ORDERED.

Entered this 22nd day of February, 2012.

/S/ Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge

---

[2] Service of Summons and the Amended Complaint on ACH will obviate any need for the Court to address at this point ACH's contentions under Rules 12(b)(4) and 12(b)(5).